IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MORGAN EARNEST, a minor, by and through her mother, LINDA KOHLER, | : : : : |
| Plaintiff, | : : |
| v. | :   No. 1:20-cv-1930 : |
| MIFFLIN COUNTY SCHOOL DISTRICT, | : : : |
| Defendant. | : : : |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff Morgan Earnest, a minor, by and through her mother, Linda Kohler, by and through the undersigned counsel, respectfully submit this Brief in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, stating in support thereof as follows:

**I.   INTRODUCTION**

In the American public school system, "students do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *Morse v. Frederick*, 551 U.S. 393, 396-97 (2007) (quoting *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 506 (1969)). To "justify prohibition of a particular expression of opinion," school officials must demonstrate that "the forbidden

conduct would materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." *Tinker*, 393 U.S. at 506.

This lawsuit challenges a patently unlawful, blanket prohibition against all clothing that expresses political speech in Defendant Mifflin County School District ("District"). The District is a public school district with administrative offices in Lewistown, Pennsylvania, which, on October 1, 2020, distributed the following message to its students' families:

> Dear Parents/Guardians:
>
> This information is going to be shared with students and staff today.
>
> Starting Monday October 5, 2020, no masks, articles of clothing or other items may be worn or otherwise brought to Mifflin County School District property, which contain political speech or symbolize a particular political viewpoint, including but not limited to confederate flags and swastikas, as well as BLM logos or phrases associated with that movement.
>
> This action is being taken due to complaints that have been received about such items and how those items have disrupted the education of students within the Mifflin County School District.
>
> Thanks for your attention on this matter.
>
> MCASD Administration

*Compl.* ¶ 5.

Plaintiff Morgan Earnest is a tenth-grade student at Mifflin County High School, a high school within the District. *Id.* ¶ 7. Ms. Earnest is a supporter of President Donald Trump. *Id.* ¶ 8. When school reopened on October 12, 2020, Ms. Earnest decided to show her support for President Trump by wearing to school a mask and t-shirt supporting President Trump's reelection campaign. *Id.* ¶ 9. Ms. Earnest wore the President Trump reelection mask to school every day that she attended school between the start of this academic year and October 12, 2020. *Id.* ¶ 10. Ms. Earnest wore the President Trump reelection t-shirt to school on two prior occasions. *Id.* ¶ 11. Ms. Earnest's wearing of the mask and t-shirt on prior occasions caused no disruptions, and nobody from the District expressed any concerns on those occasions. *Id.* ¶ 12. The mask states, in full, "Women for Trump." *Id.* ¶ 13. The t-shirt states, on the front, "Trump 2020 Keep America Great," and, on the back, "Trump the Sequel Make Liberals Cry Again." *Id.* ¶ 14.

At approximately 9:00 a.m. on October 12, 2020, Ms. Earnest was sent to her school's administrative office and given the ultimatum of either turning her shirt and mask inside-out or going home for the rest of the school day. *Id.* ¶ 15. The sole stated reason for requiring Ms. Earnest to take such actions was the District's new policy prohibiting clothing expressing political beliefs. *Id.* ¶ 16. Ms. Earnest chose not to alter her clothing, so she was suspended and told that she would again be suspended if she ever wore the mask or t-shirt again. *Id.* ¶¶ 18, 19.

Ms. Earnest's mask and t-shirt did not disrupt the District's activities. *Id.* ¶ 17. Indeed, as set forth above, she was sent home at the beginning of the school day. *Id.* ¶ 15. As also set forth above, Ms. Earnest had worn both the mask and t-shirt on multiple, prior occasions, without incident. *Id.* ¶¶ 10, 11.

For the reasons set forth below, the District's actions to both send Ms. Earnest home for wearing the President Trump reelection mask and shirt, as well as to prohibit her from wearing the mask and shirt again, wantonly violate Ms. Earnest's First Amendment right to free speech. The District may well have a fear that a simple article of clothing may disrupt the school day. But "our Constitution says we must take this risk; and our history says that it is this sort of hazardous freedom—this kind of openness—that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious, society." *Tinker*, 393 U.S. at 508 (citing *Terminiello v. Chicago*, 337 U.S. 1 (1949)). The District should be enjoined from enforcing its blatantly unlawful policy pending the outcome of this case.

## II.   PROCEDURAL HISTORY

This matter is in its nascent stages. Concurrently with the filing of this Motion, Ms. Earnest is filing her Complaint.

### III.   STATEMENT OF FACTS

Ms. Earnest incorporates the facts set forth in the introduction as the relevant facts at bar.

### IV.   QUESTION PRESENTED

Whether a public school district policy banning all clothing containing any expression of political speech violates the First Amendment to the U.S. Constitution.

*Suggested answer: Yes.*

### V.   LEGAL ARGUMENT

Federal Rule of Civil Procedure 65 authorizes this Court to grant temporary restraining orders to prohibit unlawful conduct. When granting a temporary restraining order under Rule 65, this Court weighs four factors:

> (1) whether the movant has a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether there will be greater harm to the nonmoving party if the injunction is granted; and (4) whether granting the injunction is in the public interest.

*B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 302 (3d Cir. 2013) (en banc) (citing *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 252 n.10 (3d Cir. 2002)). For the reasons set forth below, those factors plainly weigh in favor of granting a preliminary injunction.

### A. Ms. Earnest Is Likely to Succeed on the Merits of Her Claims.

The first portion of this Court's Rule 65 analysis asks whether the movant is likely to prevail on the relevant claims. *B.H. ex rel. Hawk*, 725 F.3d at 302 (citation omitted). Ms. Earnest easily satisfies that threshold inquiry, as she is highly likely to succeed in this challenge to the District's unlawful dress code policy. For one, the District's policy is a blanket restriction on speech that violates *Tinker* and its progeny. Moreover, even if the policy falls within the narrow confines of recognized exceptions to authorized school speech restrictions—an assumption that is denied—the policy is unconstitutionally overbroad.

#### 1. Student Speech May Only Be Restricted When It Constitutes a Material and Substantial Disruption to School Activities, a Mandate that the District's Blanket Policy Against Political Clothing Violates.

"[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002). As such, "students do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *Morse*, 551 U.S. at 396-97 (quoting *Tinker*, 393 U.S. at 506). Under the "general rule" set forth in *Tinker*, public school districts may only restrict school speech that threatens a specific and substantial disruption to the

school environment. *Saxe v. State College Area Sch. Dist.*, 240 F.3d 200, 211 (3d Cir. 2001) (citing *Tinker*, 393 U.S. at 504).

In the more than fifty years since *Tinker*, this Court has recognized just three circumstances justifying restriction of in-school speech: (1) the use of vulgar, lewd, or profane language;[1] (2) speech that "a reasonable observer would interpret as advocating illegal drug use" and that cannot "plausibly be interpreted as commenting on any political or social issue;"[2] and (3) restrictions that are "reasonably related to legitimate pedagogical concerns."[3]

At this stage of litigation, the District's justifications for enacting this policy—much less suspending Ms. Earnest for wearing inoffensive and non-disruptive clothing—are unclear. However, no reasonable justification can possibly fall within the narrow categories set forth above. This policy aims to restrict political speech, not inappropriate language or language relating to drug use. There can also be no legitimate pedagogical concerns justifying the outright prohibition of political discussion in the school. Political speech is a foundational principle of our republic, even when employed at school. There is nothing legitimate, much less pedagogical, about prohibiting high schoolers from engaging in such speech, and no case of this Court has ever reached such a troubling conclusion.

---

[1] *B.H. ex rel. Hawk*, 725 F.3d 293, 303 (3d Cir. 2013).
[2] *Morse*, 551 U.S. at 422.
[3] *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988).

### 2. Even Assuming *Arguendo* that the Policy Addresses Concerns that Materially and Substantially Disrupt School Activities, Which Is Denied, the Policy Is Unconstitutionally Overbroad.

The District's policy is also unconstitutionally overbroad. A school regulation of student speech is overbroad when there is "a likelihood that the [regulation's] very existence will inhibit free expression" by "inhibiting the speech of third parties who are not before the Court." *Saxe*, 240 F.3d at 214 (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 799 (1984)). A school rule regulating student speech may be struck down on its face for overbreadth when the rule's prohibitions reach too much constitutionally protected expression, and the overbreadth is "'substantial in relation to the [regulation's] plainly legitimate sweep.'" *Sypniewski*, 307 F.3d at 258-59 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)).

The District's policy is a classic example of an overbroad restriction. Even assuming *arguendo* that the District's enactment of the policy aligned with *Tinker*—a fact that is denied, for the reasons set forth above—that reasoning is overbroad, and the Court need not look beyond Ms. Earnest's allegations to see why: Ms. Earnest, a tenth-grade student, was sent home, at the beginning of the school day, for merely wearing a mask and t-shirt, which she had worn on numerous prior occasions, without incident. Whatever the District may intend to

regulate by this policy, there is surely a narrower means of accomplishing that goal.

### B. In the Absence of Immediate Injunctive Relief, Ms. Earnest Will Suffer Irreparable Harm.

The second portion of this Court's Rule 65 analysis asks whether the movant will be irreparably harmed if the Court denies the desired relief. *B.H. ex rel. Hawk*, 725 F.3d at 302 (citation omitted). Here, again, Ms. Earnest easily satisfies that showing.

The District's ongoing enforcement of this policy constitutes irreparable harm. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also ACLU v. Reno*, 217 F.3d 162, 180 (3d Cir. 2000) (stating that, in First Amendment challenges, plaintiffs who meet the merits prong of the test for a preliminary injunction "will almost certainly meet the second, since irreparable harm normally arises out of the deprivation of speech rights.") (internal citation omitted).

Ms. Earnest may not wear a campaign mask or t-shirt again—the District's representatives have told her as much, and there is no reason to doubt those statements, given their past enforcement of the District's policy. Ms. Earnest will, therefore, suffer irreparable harm, and her speech is actively restricted, every day that the District enforces this policy.

### C. The District Will Suffer No Irreparable Harm By Allowing Ms. Earnest to Wear a Political T-Shirt.

The third portion of this Court's Rule 65 analysis asks whether the desired injunction will irreparably harm the non-moving party. *B.H. ex rel. Hawk*, 725 F.3d at 302 (citation omitted). Here, that inquiry is self-evident. The District has no right to enforce an unconstitutional policy; thus, the District will not be harmed by an order prohibiting such enforcement.

### D. Public Interest Favors the Restraint of Constitutional Violations Like the One at Bar.

The final portion of this Court's Rule 65 analysis asks whether the desired injunction is in the public interest. *Id.* (citation omitted). Here again, that inquiry is obvious. Simply put, "the public's interest favors the protection of constitutional rights in the absence of legitimate countervailing concerns." *B.H. ex rel. Hawk*, 827 F. Supp. 2d at 409 (quoting *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 884 (3d Cir. 1997)).

### E. No Bond Should Be Required, Because the District Will Suffer No Legitimate Losses Associated with this Request.

Finally, while Rule 65(c) nominally requires the posting of a bond pending the outcome of an injunction matter, the U.S. Court of Appeals for the Third Circuit has acknowledged that "that there may be instances in which a strict reading of Rule 65(c) would be inappropriate." *Temple Univ. v. White*, 941 F.2d 201, 219 (3d Cir. 1991). An exception to Rule 65(c) is warranted when posting

a bond would impose a burden on the movant that outweighs any "possible loss to the enjoined party[,]" and when movants seek "to enforce important federal rights or public interests." *Id.* at 220 (internal quotation marks and citation omitted). Ms. Earnest is a high school student with little means of posting a bond. Moreover, there is no realistic loss associated with this injunction, and the case involves "important federal rights" that are divorced from direct financial obligations of the District. For these reasons, a bond is inappropriate, and Ms. Earnest requests the waiver of that requirement.

## VI.   CONCLUSION

For the reasons set forth above, Plaintiff Morgan Earnest, a minor, by and through her mother, Linda Earnest, respectfully requests that this Court enter a temporary restraining order and preliminary injunction to enjoin Defendant Mifflin County School District from enforcing the foregoing policy and schedule a preliminary injunction hearing for the earliest available opportunity but before the expiration of the temporary restraining order.

                                        Respectfully submitted,

                                        *s/ David S. Gaines, Jr.*
                                        David S. Gaines, Jr.
                                        I.D. No. PA308932
                                        MILLER, KISTLER & CAMPBELL
                                        720 South Atherton Street, Suite 201
                                        State College, PA 16801
                                        (814) 234-1500 TEL
                                        (814) 234-1549 FAX
                                        dgaines@mkclaw.com
                                        *Counsel for Plaintiff*

Dated: October 20, 2020

## **CERTIFICATE OF SERVICE**

I, David S. Gaines, Jr., hereby certify that, on this twentieth day of October, 2020, I placed this Brief in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction in the custody of the U.S. Postal Service, first-class mail, postage prepaid, addressed as follows:

> Oris C. Knepp, III
> 10 South Wayne Street
> Lewistown, PA 17044
> *Solicitor for Mifflin County School District*

> *s/ David S. Gaines, Jr.*
> David S. Gaines, Jr.
> *Counsel for Plaintiff*

Dated: October 20, 2020