## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MORGAN EARNEST, a minor, by and through her mother, LINDA KOHLER, | : | Civil No. 1:20-CV-01930 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MIFFLIN COUNTY SCHOOL DISTRICT, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## ORDER

Before the court is Plaintiff's motion for a temporary restraining order and preliminary injunction filed October 20, 2020. (Doc. 3.) For the reasons that follow, **IT IS ORDERED THAT** the motion for temporary restraining order is **GRANTED**.

### BACKGROUND

Plaintiff, Morgan Earnest ("Earnest"), is a 15-year-old high school student attending Mifflin County School District ("the District"). (Doc. 1, pp. 1, 4.)[1] Earnest is a student who asserts that she is engaged and interested in the 2020 presidential election. (*Id.* at 3.) From the start of the 2020-21 academic school year, Earnest wore a mask supporting President Donald Trump's reelection

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

campaign every day that she attended school.[2]  (*Id.*; Doc. 1-3.)  Earnest's mask

depicted the words "Women for Trump."  (Doc. 1-3.)  On two occasions, Earnest

also wore a t-shirt supporting President Trump's reelection campaign to school.

(Doc. 1, p. 3.)  The front of this shirt bore the words "Trump 2020 Keep America

Great," and the back of the shirt contained the words "Trump 2020 The Sequel

Make Liberals Cry Again".  (*See* Doc. 1-4.)  Earnest asserts that there were no

disruptions to the school environment when she wore these articles of clothing.

(Doc. 1, p. 3.)

On or around October 1, 2020, the District emailed the following message to

families of students within the District:

Dear Parents/Guardians:

This information is going to be shared with students and staff today.

Starting Monday October 5, 2020, no masks, articles of clothing or other items may be worn or otherwise brought on to Mifflin County School District property, which contain political speech or symbolize a particular political viewpoint, including but not limited to confederate flags and swastikas, as well as BLM logos or phrases associated with that movement.

This action is being taken due to complaints that have been received about such items and how those items have disrupted the education of students within the Mifflin County School District.

---

[2] It is immaterial to the court's analysis that Earnest supports President Trump's reelection campaign.  The issue in this lawsuit is whether Earnest's right to free speech under the First Amendment was violated by the District's policy restricting political speech.  Earnest possesses a right to free speech regardless of which presidential candidate she chooses to support.

Thanks for your attention on this matter.

MCSD Administration

(*Id.* at 2; Doc. 1-2, p. 1.)

Between October 2 and October 9, 2020, the District did not offer in-person learning due to the COVID-19 pandemic.  (Doc. 1, p. 3.)  School reopened on October 12, 2020, and Earnest decided to attend school wearing her mask and t-shirt supporting President Trump's campaign.  (*Id.*)  That morning, at around 9:00 a.m., Earnest was sent to the administrator's office and asked to either turn her mask and shirt inside-out or go home for the remainder of the school day because her articles of clothing were in violation of the District's new policy.  (*Id.* at 4.)  Earnest declined to turn her mask or t-shirt inside-out, and was therefore sent home for the remainder of the school day.  (*Id.*)  She was also warned that she would be sent home again if she wore a mask or t-shirt expressing a political viewpoint in the future.  (*Id.*)

On October 20, 2020, Earnest, through her mother, Linda Kohler, filed the instant lawsuit, seeking redress for alleged violations of her First and Fourteenth Amendment rights.  (Doc. 1.)  On the same day, Earnest filed a motion for a temporary restraining order and a preliminary injunction against the District to enjoin it from enforcing the portions of its October 1, 2020 policy which prohibited all clothing expressing political speech.  (Doc. 3.)  This motion was accompanied

by a supporting brief.  (Doc. 3-1.)  On October 21, 2020, the court issued a

scheduling order setting a telephonic status conference for the next day, October

22, 2020, during which the parties would discuss the pending motion and the

possibility of an expedited briefing schedule on Earnest's request for injunctive

relief.  (Doc. 4.)  Earnest's counsel was also directed to immediately effect service

of the complaint, provide the court with proof of service, and exercise best efforts

to identify the District's counsel prior to this status conference.  (*Id.*)  The

District's counsel had not entered an appearance at the time of this status

conference, and the District's solicitor appeared on behalf of the District.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 allows a district court to enter a

temporary restraining order.  The Court of Appeals for the Third Circuit has

applied one standard to a motion for both a temporary restraining order and a

preliminary injunction.  *United States v. Bell*, 414 F.3d 474 (3d Cir. 2005).  To

obtain a preliminary injunction, a plaintiff must establish: (1) that they are likely to

prevail on the merits of the case; (2) that they would suffer irreparable harm if

relief were denied; (3) that the harm defendants would suffer would not outweigh

the harm plaintiff would suffer if relief were denied; and (4) that the public interest

weighs in favor of granting the injunctive relief.  *Holland v. Rosen*, 895 F.3d 272,

285–86 (3d Cir. 2018) (citing *Del. Strong Families v. Att'y Gen. of Del.*, 793 F.3d 304, 308 (3d Cir. 2015)).

A temporary restraining order is "an extraordinary remedy never awarded as of right." *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008)). Thus, a temporary restraining order should only be awarded in the "limited circumstances" where "the movant, by a clear showing, carries the burden of persuasion." *Holland*, 895 F.3d at 285. Ultimately, the decision of whether to issue a preliminary injunction is left to the sound discretion of the district court. *Pennsylvania v. President of United States*, 930 F.3d 543, 565 (3d Cir. 2019) (citing *Winter*, 555 U.S. at 24).

## DISCUSSION

### A. Earnest Has a Likelihood of Success on the Merits.

Earnest alleges that the District's October 1, 2020 policy prohibiting students from wearing attire that contains, *inter alia*, political speech violates her right to free speech protected by the First Amendment to the United States Constitution. Earnest is challenging the District's policy both on its face and as applied to her desire to wear attire indicating her support for a particular candidate running for President of the United States. At this stage, the court is only evaluating the likelihood of success on the merits of Earnest's as-applied challenge to the District's policy.

As an initial matter, school districts have more latitude to regulate the conduct of their students in school than the state is typically allowed under the First Amendment. *See Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986) (holding that a school is a non-public space and the First Amendment does not protect students' freedom of expression in a school to the same extent that it would protect the same expression in a public space, i.e. a courthouse). Nonetheless, students are still "persons" under the Constitution and do not "shed their constitutional rights to freedom of speech and expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). As such, a school's authority to regulate the conduct of its students is not unlimited—its interest in avoiding material and substantial disruptions in learning must be balanced against the students' rights which such regulation may seek to abridge. *Id.*

Indeed, the school district's ability to demonstrate substantial disruption is often determinative in cases challenging a restriction on students' right to free speech. *See, e.g.*, *Tinker*, 393 U.S. at 514 (holding that students wearing black armbands in protest of the Vietnam war was protected by the First Amendment since the school did not reasonably "forecast substantial disruption . . . and no disturbances or disorders . . . in fact occurred"); *Cohen v. Cal.*, 403 U.S. 15, 23 (1971) ("[U]ndifferentiated fear or apprehension of disturbance is not enough to

overcome the right to freedom of expression."); *Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 219 (3d Cir. 2011) (allowing restriction on speech where a substantial disruption resulted from the student's speech); *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 257 (3d Cir. 2002) (finding that a school must have a "well-founded fear of genuine disruption in the form of substantially interfering with school operations" in order to suppress student speech); *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 215 (3d Cir. 2001) ("[T]he mere fact that someone might take offense at the content of speech is not sufficient justification for prohibiting it.") (citations omitted); *B.W.A. v. Farmington R-7 Sch. Dist.*, 554 F.3d 734, 739−40 (8th Cir. 2009) (holding that the school could reasonably limit speech based on a reasonable forecast of disruption resulting from students displaying the confederate flag because there had been numerous instances of violence and racial slurs that occurred at the school surrounding the flag's display); *Guiles v. Marineau*, 461 F.3d 320, 330−31 (2nd Cir. 2006) (concluding that the student was allowed to wear a t-shirt depicting then-President George W. Bush in an unflattering light because no disruption was caused); *Castorina ex rel. Rewt v. Madison Cnty. Sch. Bd.*, 246 F.3d 536, 542 (6th Cir. 2001) (reversing summary judgment for school officials where there was no showing of disruption); *Denno v. Sch. Bd. of Volusia Cnty., Fl.*, 182 F.3d 780, 785 (11th Cir. 1999) ("noting the absence of any facts in the complaint that would suggest a reasonable fear of

disruption"), *vacated and decided on other grounds*, 218 F.3d 1267 (11th Cir. 2000).

Moreover, cases that have addressed the issue of student speech in the context of attire have likewise focused on the disruptive effects, if any, that the attire had on the school district's learning environment.  *See, e.g.*, *Tinker*, 393 U.S. at 514 (holding that students' wearing of black armbands in protest of the Vietnam war was protected by the First Amendment since the school did not reasonably "forecast substantial disruption . . . and no disturbances or disorders . . . in fact occurred"); *Sypniewski*, 307 F.3d at 254–58 (finding that despite a history of racial tension and harassment, the student was allowed to wear a t-shirt depicting "redneck" themes since it was not "sufficiently 'similar' . . . to permit an inference of substantial disruption"); *Guiles*, 461 F.3d at 330–31 (concluding that the student was allowed to wear a t-shirt depicting then-President George W. Bush's face superimposed on the body of a chicken surrounded by images of oil rigs, dollar signs, lines of cocaine, and a martini glass because no disruption was caused).

In this case, Earnest is likely to prevail on the merits of her as-applied challenge to the constitutionality of the District's policy.  Earnest arrived at school wearing a t-shirt and mask endorsing a candidate for President of the United States. As the Supreme Court has repeatedly held, wearing articles of clothing are akin to "pure speech," which "is entitled to comprehensive protection under the First

Amendment." *Tinker*, 393 U.S. at 505–06; *see also Sypniewski*, 307 F.3d at 254

("Like the armbands at issue in *Tinker*, the wearing of the T-shirt was 'akin to

"pure speech,"' targeted for its expressive content.") (quoting *Tinker*, 393 U.S. at

508). In addition, there is no evidence that Earnest's choice of attire during the

school day resulted in any disruption that would cause the District to have a "well-

founded fear of genuine disruption in the form of substantially interfering with

school operations." *Sypniewski*, 307 F.3d at 257.

The court takes note, however, of the District Solicitor's proffer during the

conference with the court that the District received a number of complaints

regarding students wearing masks bearing the confederate flag and masks

supporting the "Black Lives Matter" movement. In addition, the District Solicitor

noted that there was an incident of violence between two students on October 1,

2020, one of whom was wearing a mask relating to the "Black Lives Matter"

movement, and one of whom was wearing a mask relating to President Trump.

Earnest was not involved in this altercation.

The court also recognizes that the District Solicitor did not dispute that

Earnest wore her mask to school every day during the 2020-21 academic year

before the October 1, 2020 policy was implemented, and had worn her t-shirt on

two prior occasions without the occurrence of any disruptive incident. (Doc. 1, pp.

3–4, 6.)

The court views the Third Circuit's decision in *Sypniewski v. Warren Hills Regional Board of Education*, 307 F.3d 243 (3d Cir. 2002), as controlling precedent in this case. In *Sypniewski*, the school was presented with a history of racial tensions between black students and students who had formed a gang known as "the Hicks." *Id.* at 247. In response to outbreaks of violence and threatened violence between these students, the school issued a policy which stated:

> District employees and student(s) shall not racially harass or intimidate other student(s) or employee(s) by name calling, using racial or derogatory slurs, wearing or possession of items depicting or implying racial hatred or prejudice. District employees and students shall not at school, on school property or at school activities wear or have in their possession any written material, either printed or in their own handwriting, that is racially divisive or creates ill will or hatred. (Examples: clothing, articles, material, publications or any item that denotes Ku Klux Klan, Arayan [sic] Nation-White Supremacy, Black Power, Confederate flags or articles, Neo-Nazi or any other "hate" group. This list is not intended to be all inclusive.)

*Id.* at 249. After the issuance of this policy, Sypniewski sought to wear a t-shirt depicting the humor of comedian Jeff Foxworthy, known for the phrase "You Might Be a Redneck if." *Id.* at 250. The t-shirt listed the "Top 10 reasons you might be a Redneck Sports Fan." *Id.* at 249–50. The shirt did not depict a confederate flag, the court did not find that Sypniewski was part of the Hicks gang, and Sypniewski had worn the shirt on multiple prior occasions without incident. *Id.* at 250. Despite the absence of disruption arising from Sypniewski wearing the

shirt, Sypniewski was found to be in violation of the school's policy and was suspended for wearing the shirt.  *Id.*

The Third Circuit disagreed with the school's decision, noting that there was "little or no evidence that the word 'redneck' had been used to harass or intimidate, or otherwise to offend."  *Id.* at 256.  In other words, the court determined that the "mere association" that may follow from the use of the word "redneck" was insufficient to justify a ban on its use.  *Id.* at 257.  The court also noted that the "First Amendment would have little meaning" if schools could justify prohibition of content that amounts "to a promotion of values consistent with the items and activities that had caused racial unrest."  *Id.* at 257.  Thus, the court held that:

> [w]here a school seeks to suppress a term merely related to an expression that has proven to be disruptive, it must do more than simply point to a general association.  It must point to a particular and concrete basis for concluding that the association is strong enough to give rise to well-founded fear of genuine disruption in the form of substantially interfering with school operations or with the rights of others.

*Id.*

Much like Sypniewski, Earnest had worn her t-shirt and mask on prior occasions without incident; there was no evidence that she was involved in any altercations relating her to attire; and she was not involved in the violent incident that the District Solicitor asserts occurred on October 1, 2020.  Earnest's attire expresses support for a candidate for President of the United States.  Some may associate a presidential candidate with certain views that they find offensive.  But

11

the reactions of some based on the perceived association of a presidential candidate

with views with which they disagree is not a valid reason to prohibit passive

political speech in school.  "The Supreme Court has held time and again, both

within and outside of the school context, that the mere fact that someone might

take offense at the content of speech is not sufficient justification for prohibiting

it."  *Saxe*, 240 F.3d at 215.

It is equally true today in our tumultuous political environment as it was in

the turbulent time during the Vietnam conflict that:

> Any word spoken, in class, in the lunchroom, or on the campus, that
> deviates from the views of another person may start an argument or
> cause a disturbance.  But our constitution says we must take this risk,
> . . . and our history says that it is this sort of hazardous freedom—this
> kind of openness—that is the basis of our national strength and of the
> independence and vigor of Americans who grow up and live in this
> relatively permissive, often disputatious society.

*Tinker*, 393 U.S. at 508–09 (citation omitted).  Moreover,

> [t]he vigilant protection of constitutional freedoms is nowhere more
> vital than in the community of American schools.  . . . .  The classroom
> is peculiarly the 'marketplace of ideas.'  The Nation's future depends
> upon leaders trained through wide exposure to that robust exchange of
> ideas which discovers truth 'out of a multitude of tongues, (rather) than
> through any kind of authoritative selection.

*Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967) (citations omitted).

Thus, consistent with the holding in *Sypniewski*, the court finds that Earnest

is likely to prevail on her claim that she was denied her constitutional right to free

speech when she was sent home after she refused to turn her mask and t-shirt

inside-out to comply with the District's October 1, 2020 policy. (Doc. 1, p. 4.) Accordingly, the court finds that Earnest is likely to prevail on the merits of her as-applied challenge to the constitutionality of the District's policy.

### B. Earnest Would Suffer Irreparable Injury if a Temporary Restraining Order Were Denied.

Next, the court must consider whether Earnest would suffer irreparable harm if injunctive relief were denied. *Holland*, 895 F.3d at 285–86. To demonstrate irreparable harm, Earnest "must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

Here, Earnest would suffer irreparable injury because she is effectively forced to choose between forfeiting her right to free speech or attending school in person to further her education. Indeed, she was informed that she would be sent home if she chose to wear clothing expressing a political viewpoint in the future, and was in fact sent home after she wore her mask and t-shirt in support of a presidential candidate. (Doc. 1, p. 4.) The Supreme Court has held that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Accordingly, because Earnest's First Amendment rights would be burdened in the

absence of injunctive relief, the court finds that she has established irreparable injury.

### C. The Balancing of Harms and Public Interest Weigh in Favor of Granting a Temporary Restraining Order.

Having concluded that Earnest has established the first two elements of the temporary restraining order analysis, the court must now weigh the remaining factors—whether Earnest's irreparable harm is outweighed by the harm the District would suffer by the imposition of a temporary restraining order and whether the public interest weighs in favor of granting the injunction. *Holland*, 895 F.3d at 285–86. The court finds that these factors also weigh in favor of granting a temporary restraining order. Although an injunction would clearly interfere with the District's ability "to prescribe and control conduct in the schools[,]" *Tinker*, 393 U.S. at 507, this cost does not outweigh the irreparable injury Earnest would suffer to her fundamental right to free speech and expression. *Elrod*, 427 U.S. at 373. Similarly, because the right to free speech "is entitled to comprehensive protection under the First Amendment[,]" *Tinker*, 393 U.S. at 505–06, the court finds that a temporary restraining order protecting Earnest's right to free speech would be in the public interest.

Accordingly, because Earnest has shown that she is likely to succeed on the merits of her as-applied challenge to the constitutionality of the District's policy,

that she would suffer irreparable harm in the absence of injunctive relief, that her irreparable harm is not outweighed by the potential harm to the District, and that the public interest weighs in favor of granting relief, the court will grant Earnest's motion for a temporary restraining order.

### D. The Bond Requirement is Waived.

Earnest requests that the court waive the requirement to post bond because she is financially unable to do so.  Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  However, a district court may waive the bond requirement of Rule 65(c) under certain circumstances.  *Elliott v. Kiesewetter*, 98 F.3d 47, 59–60 (3d Cir. 1996).  When considering whether to waive the bond requirement, a court should consider (1) "the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant"; and (2) "the impact that a bond requirement would have on enforcement" of an important federal right.  *Temple Univ. v. White*, 941 F.2d 201, 220 (3d Cir. 1991).  "Where the balance of these equities weighs overwhelmingly in favor of the party seeking

the injunction, a district court has the discretion to waive the Rule 65(c) bond requirement." *Elliott*, 98 F.3d at 60.

Here, because the temporary restraining order seeks protection of Earnest's important right to free speech, the court will waive the bond requirement. Imposing a bond requirement on Earnest in this case would effectively force her to pay a monetary cost to enforce her right to voice her support for a presidential candidate in school. Additionally, Earnest's status as a 15-year-old high school student impedes her ability to post bond at this time. In contrast, the District's Solicitor has stated that he is unaware of any financial hardship that the District would suffer from its inability to enforce its October 1, 2020 policy against Earnest. Accordingly, the court will waive the bond requirement in this instance.

## CONCLUSION

For the foregoing reasons, Earnest's motion for a temporary restraining order is **GRANTED**. (Doc. 3.) Accordingly, a temporary restraining order is entered as follows:

1. Plaintiff's motion for a temporary restraining order, Doc. 3, is granted to the extent that it seeks to enjoin the District from enforcing its policy to prevent Earnest from wearing the attire she has worn in the past (as depicted in her complaint at Docs. 1-3 and 1-4) indicating her support for a political candidate. The court grants this limited relief at this stage

without prejudice to Earnest seeking a broader injunction at a preliminary

injunction hearing or the District providing evidence that a preliminary

injunction should not issue.

2. This temporary restraining order shall remain in effect for **14 days**.  At

the end of this prescribed time period, this temporary restraining order

shall expire unless extended by the court pursuant to Federal Rule of

Civil Procedure 65(b)(2).

3. Beginning immediately, the District shall not enforce its October 1, 2020

policy against Earnest to the extent that she wears the attire she has worn

in the past (as depicted in her complaint at Docs. 1-3 and 1-4) indicating

her support for a political candidate during the period of time that this

order remains in effect.

4. The filing of bond is waived.

5. The parties shall follow an expedited briefing schedule for disposition of

Earnest's motion for a preliminary injunction as follows: the District's

brief in opposition shall be filed on or before **October 28, 2020**.  If

Earnest wishes to file a reply brief, she shall file such brief on or before

**November 2, 2020**.

6. The court will hold a preliminary injunction hearing on **November 3,**

**2020**, at 1:00 p.m. in courtroom 4 on the 8th floor of the Ronald Reagan

Federal Building and United States Courthouse, at which time the parties

shall be prepared to present evidence and arguments on the merits of

Earnest's motion for a preliminary injunction.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: October 23, 2020